Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **CRYSTAL MALDONADO**, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **PARKER & PARKER ASSOCIATES, LLC**, a Texas Limited Liability Company, and **JOHN DOE,** <br><br> Defendants. | Civil Action No.: 3:25-cv-00207 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff CRYSTAL MALDONADO, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant PARKER & PARKER ASSOCIATES, LLC (hereinafter "PPA") and JOHN DOE to stop their illegal practice of sending unsolicited telemarketing calls through John Doe to the telephones of consumers whose phone numbers were registered on the Federal National Do Not Call Registry, and to obtain redress for all persons injured by their conduct. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from and/or on behalf of Defendant PPA. Plaintiff alleges as follows upon personal knowledge as to

1

herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

## NATURE OF THE ACTION

1. As a part of their marketing, Defendant PPA sent thousands of unsolicited calls through John Doe to consumers whose phone numbers were registered on the Federal National Do Not Call Registry.

2. Defendant PPA did not obtain consent prior to sending these unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6. By sending these unsolicited calls to people who have registered their phone numbers on the national do-not call database, Defendant PPA violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendant PPA to stop their unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff Crystal Maldonado is a natural person residing in El Paso, Texas.

9. Defendant SPG is a limited liability company organized and existing under the laws of Florida.

10. Defendant PPA is a corporation organized and existing under the laws of Texas.

11. Unnamed Party John Doe is an unidentified telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant PPA.

## JURISDICTION AND VENUE

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13. This Court has specific personal jurisdiction over Defendant PPA because PPA caused the violating calls to be sent to Plaintiff in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

15. Defendant PPA offers consumers a variety of different types of insurance that include auto insurance.

16. Defendant PPA sent out unsolicited calls through John Doe soliciting Plaintiff and the putative class for auto insurance.

17. Defendant PPA failed to obtain consent from recipients, nor did they check the National Do Not Call Registry (hereinafter ("NDNCR").

## PLAINTIFF'S FACTUAL ALLEGATIONS

18. Plaintiff is a natural person who resides in this District.

19. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

20. Defendant PPA is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

21. Plaintiff's telephone number ending in -4486 is a residential number and is registered to a cellular telephone service.

22. Plaintiff's telephone number ending in -4486 is used for personal purposes and is not associated with business.

23. Plaintiff successfully registered her telephone number ending in 4486 on the NDNCR since December 2004, which was more than 31 days prior to receiving the alleged calls in this complaint.

24. Defendant PPA is an Allstate insurance agent that offers consumers a variety of different types of insurance that include auto insurance.

25. Defendant PPA contracted with John Doe to make unsolicited phone calls to thousands of consumers residential telephone numbers soliciting auto insurance on behalf of Defendant PPA.

26. Upon information and belief, Defendant PPA gives John Doe permission to act as Defendant PPA's sales agent.

27. Upon information and belief, Defendant PPA instructs and gives interim instructions to John Doe by providing lead-qualifying instructions and lead volume limits.

28. Upon information and belief, Defendant PPA determines the times in which the phone calls would be placed by John Doe to perspective consumers and which states to target as part of PPA's nationwide telemarketing campaign.

29. Upon information and belief, Defendant PPA provides John Doe with a calling list that involves thousands of residential telephone numbers.

30. Upon information and belief, Defendant PPA fails to scrub its calling list against the NDNCR as required by the FTC.

31. As per the FTC and FCC, for profit sellers who make outbound calls to sell goods and services (either directly or through their agents such as John Doe) to residential telephone numbers are required to subscribe to the NDNCR database and pay a fee for each area code they plan to call.

32. As per the FTC and FCC, for profit sellers who make outbound calls to sell goods and services (either directly or through their agents such as John Doe) to residential telephone numbers are required to download the NDNCR list and remove such telephone numbers from their calling lists and update their calling lists every thirty-one days.

33. Upon information and belief, Defendant PPA has made substantial profit gains through illegal telemarketing.

34. Plaintiff is a victim of the Defendants PPA's nationwide telemarketing campaign as she was targeted and received at least three (3) unsolicited calls to her telephone ending in -4486 on April 28, 2025 using spoofed caller ID numbers that deceptively began with Plaintiff's area code and are as follows:

Call #1 - (915) 278-8188
Call #2 - (915) 284-9491
Call #3 - (915) 706-4152

35. Plaintiff did not request these unsolicited calls regarding auto insurance.

36. Each of the alleged calls failed to identify who they were calling with and/or who they were calling on behalf of.

37. Each of the alleged calls had the same exact sales pitch soliciting Plaintiff for auto insurance.

38. Plaintiff, annoyed and aggravated by the alleged calls, engaged in the third call to identify Defendant.

39. To qualify Plaintiff for Defendant PPA's insurance services, Plaintiff's provided his vehicle make, model, and year along with collecting Plaintiff's complete name and address.

40. Plaintiff was then transferred to PPA

41. An agent with Defendant PPA named Josh Greer (hereinafter "Greer") came on to the line.

42. Greer stated to Plaintiff,
"Just to let you know my name is Joshua Greer and I'm with Parker & Parker Allstate insurance and the gentlemen that you were just speaking to is one of our telemarketers he helps us find ideal clients in ideal areas so we can help them save money on their insurance."

43. Greer confirmed Plaintiff's vehicle information and solicited Plaintiff for an auto insurance policy with Defendant PPA.

44. Greer advised Plaintiff the cost of the policy would be $132.49 down payment and $140 monthly.

45. Plaintiff received two text messages from Greer.





46.     Greer's contact number displayed in the second text message 512-392-2822 is a phone number owned and controlled by Defendant PPA.

47.     Upon information and belief, Defendant PPA's nationwide telemarketing campaign has reached hundreds if not thousands of more consumers residential telephone numbers like Plaintiff.

48.     Upon information and belief, Defendant PPA employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

49.     Upon information and belief, Defendant PPA does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through John Doe.

50.     Plaintiff is a Texas resident.

51.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant PPA's registration.

7

52. Defendant PPA does not qualify for an exemption under § 302.053.

53. Plaintiff never provided her prior express written consent to receive any of the alleged calls.

54. The alleged calls were nonconsensual encounters that were not made for emergency purposes.

55. The alleged calls were made to Plaintiff for the purpose of encouraging auto insurance on behalf of Defendant PPA.

56. Upon information and belief, the alleged calls were placed while knowingly ignoring the NDNCR.

57. Upon information and belief, the alleged calls were placed without Defendant PPA training its agents on the use of an internal do-not-call policy.

58. Plaintiff was harmed by the alleged calls.

59. Plaintiff was temporarily deprived of legitimate use of her phone because her privacy was improperly invaded. Moreover, the calls injured Plaintiff because they were frustrating, obnoxious, annoying, and were a nuisance and disturbed the solitude of Plaintiff.

## BASIS FOR LIABILITY

60. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

61. Even if Defendant PPA did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

62. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

63. Defendant PPA authorized and hired John Doe to generate prospective customers through illegal telemarketing calls.

64. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

65. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

66. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

67. John Doe solicited Plaintiff on behalf of Defendant PPA. Accordingly, John Doe had PPA's actual authority to solicit Plaintiff through illegal telemarketing calls.

## APPARENT AUTHORITY

68. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

69. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or

customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

70. Defendant PPA authorized John Doe to generate prospective business for PPA through illegal telemarketing.

71. John Doe called and solicited Plaintiff for auto insurance on behalf of Defendant PPA. The integration of their sales efforts was so seamless that it appeared to Plaintiff that John Doe and Defendant PPA appeared to be acting together as the same company.

72. Plaintiff reasonably believed and relied on the fact that John Doe had received permission to sell, market, and solicit the services of Defendant PPA.

73. As a direct and proximate result of John Doe's illegal phone calls – which were made on behalf of and with the apparent authority of Defendant PPA, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

74. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

75. Defendant PPA knowingly and actively accepted business that originated through the illegal calls placed by John Doe.

76. By accepting these contacts and executing contracts with the robocall victims, John Doe "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant PPA, as described in the Restatement (Third) of Agency.

77. John Doe called Plaintiff to solicit her for auto insurance on behalf of PPA.

78. Defendant PPA received Plaintiff as a new prospective customer from John Doe.

79. Defendant PPA ratified John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

80. Defendant PPA further ratified John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

81. As a direct and proximate result of John Doe's illegal phone calls, Plaintiff and Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## CLASS ALLEGATIONS

82. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class.** All persons in the United States who: (1) from the last 4 years to present (2) Defendant PPA called and/or any entity making calls on behalf of Defendant PPA (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.
>
> **Texas Subclass.** All persons in Texas who: (1) from the last 4 years to present (2) Defendant PPA called any and/or any entity making calls on behalf of Defendant PPA (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

83. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims

11

in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

84.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant sent unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

85.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of the Defendant's uniform wrongful conduct and unsolicited calls.

86.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

87.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. The Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on the Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

88.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. Whether the unsolicited calls were caused by the Defendant;

    b. Whether the unsolicited calls promoted the Defendant's products or services;

    c. Whether the Defendant checked the phone numbers to be called against the Federal Do Not Call Registry;

    d. Whether the Defendant obtained written express consent prior to sending the unsolicited calls

    e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendant's conduct.

89. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from the Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against Defendant PPA)**

90. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

91. The telephone numbers of Plaintiff and the Class are registered on the Do Not Call Registry.

92. Defendant and/or its agents, or affiliates placed unsolicited phone calls to Plaintiff and the Class members' DNC registered telephones without having their prior written consent to do so.

93. Defendant's actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry 47 C.F.R. § 64.1200(c)(2).

94. Defendant's solicitating phone calls were made for the commercial purpose of soliciting Defendant's auto insurance.

95. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

96. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

97. Plaintiff also seeks a permanent injunction prohibiting Defendant from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**Second Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against Defendant PPA)**

98. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

99. Defendant and/or its agents, or affiliates sent illegal solicitation sales calls to Plaintiff and the putative class without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

100. Upon information and belief, the actions of the Defendant also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

101. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

102. Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

103. As a result of the Defendant's violations of the Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

104. As a result of the Defendant's violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CRYSTAL MALDONADO, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing her counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate 227(c) of the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate 302.101 of the Texas Business and Commerce code;

D. An order declaring that the Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

E. An award of $1500 per call in statutory damages arising from the TCPA §227(c) for each intentional violation;

F. An order declaring that the Defendant's actions, as set out above, violate the Texas Business and Commerce code willfully and knowingly;

G. An award of $5,000 in statutory damages arising from the Texas Business and Commerce code 302.101 for each intentional violation;

H. An injunction requiring the Defendants to cease sending all unlawful calls;

I. An award of reasonable attorneys' fees and costs; and

J. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: June 11, 2025                    Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*

16